UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00679-MOC-DCK

| | | |
|---|---|---|
| **DEBORAH S. COX,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **ORDER** |
| | ) | |
| **LOWE'S HOME CENTERS, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on Defendant's Motion for Summary Judgment (#16), which has been fully briefed and is ripe for review. The court heard oral arguments on the motion on October 19, 2015. Having considered the motion and the arguments of counsel, as well as the applicable law, the court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    INTRODUCTION**

Plaintiff Deborah Cox was hired by Defendant Lowe's Home Centers in 2007 as a full-time employee in the Windows & Walls Department (also known as Home Décor). (Deposition of Deborah S. Cox ("Pl.'s Dep.") (#15-3) and (#20-1) (each parties' submitted excerpts) at 12:21-14:23). Plaintiff was also responsible for providing support to two sister departments: Paint and Home Organization. (Id. at 14:19-15:23). All of these departments were run under the same manager. (Id. at 14-15). Plaintiff held the same position throughout her employment at Lowe's. (Id. at 14:19-15:4). At the time of her hire in 2007, Plaintiff was 51 years old. (Id. at 12:22-14:13, 7:19-20).

On July 20, 2011, Lowe's received a customer complaint submitted through its website. (Pl.'s Dep. (#15-3), Ex. 1 (p. 27)). The complaint described an incident that had occurred that same day, when a customer came in to have a 5-gallon can of paint shaken in the paint shaker. While the parties characterize the sequence of events slightly differently, the interaction essentially went as follows: the customer came into the store, tried to find an employee to help him with the paint shaker, and found Plaintiff in an aisle nearby. (Pl.'s Dep. at 21:11-22:20). Plaintiff apparently had a sore back and was concerned about lifting the paint can, so she asked another employee to help with the paint. (Id.) The other employee was about to leave her shift, so the two went back and forth a few times about who would help the customer, apparently each offering to take care of it themselves. (Id.) Ultimately, the coworker put the paint in the shaker and left the store once it was done. (Id.) The customer apparently felt that the employees had been arguing about who would help him and that he had been treated rudely during this exchange, as he indicated in his written complaint. (Pl.'s Dep. (#15-3), Ex. 1 (p. 27)). Defendant then gave Plaintiff and the coworker an opportunity to submit statements about the incident; both of their stories corroborated the summary above. (Pl.'s Dep. (#15-3), Ex. 2-3 (p. 29-30)). Plaintiff denies, however, that she and the other employee argued in front of the customer. (Pl.'s Dep. (#20-1 at 22:10-17)

Plaintiff and the coworker were both terminated from their employment five days later on July 25, 2011. (Pl.'s Dep. 25:2-27:8; (#15-3), Ex. 4 (p. 31)). Plaintiff was informed that the reason for her termination was her behavior during the July 20, 2011 customer incident, which was deemed to be "rude and unfriendly" and in violation of company policy. (Id.; Mort Decl. ¶ 6). Plaintiff filed a charge of discrimination with the EEOC on January 26, 2012 (Pl.'s Dep.

(#15-3), Ex. 5), stating that she believed she had a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., because she had been terminated because of her age (55). Plaintiff premised her ADEA claim on the fact that a similarly situated individual (a 20-year-old male employee) had also had complaints made against him, and was promoted. The EEOC promptly dismissed the Charge and issued Plaintiff a Dismissal and Notice of Rights on January 27, 2012 stating that the Charge "was not timely filed with [the] EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge." (Pl.'s Dep. (#15-3), Ex. 6.) The Notice of Rights clearly states that Plaintiff had to file her ADEA lawsuit within 90 days. (Id.) ("Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.") (emphasis in original). Plaintiff nonetheless waited more than two years before filing her lawsuit on July 23, 2014. (Notice of Removal and Complaint (##1; 1-1); Pl.'s Dep. 42:5-44:22).

Plaintiff's Complaint, which was removed from North Carolina Superior Court to this court on December 8, 2014, alleges that she was unlawfully terminated on the basis of age in violation of the ADEA and North Carolina public policy. (Notice of Removal and Complaint (##1; 1-1)). Defendant argues that it is entitled to summary judgment because: 1) there is no evidence that Plaintiff's age had any bearing on her termination, and 2) Plaintiff missed the statutory deadlines for filing her EEOC charge and for filing her federal age discrimination lawsuit. See (#15).

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.

56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party.  That party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Instead, that party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 252.

### III. STATUTORY FRAMEWORK FOR AGE DISCRIMINATION CLAIMS

Plaintiff's Complaint alleges federal and state claims of age discrimination, see (#1-1), based on the ADEA and the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2. The ADEA makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual…because of such individual's age." 29 U.S.C. § 623(a)(1). The NCEEPA prohibits discrimination based on age as against public policy, providing:

> [I]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143–422.2 (1977). The statute provides a cause of action for those alleging wrongful discharge on the basis of age. Rishel v. Nationwide Mut. Ins. Co., 297 F. Supp. 2d 854, 875 (M.D.N.C. 2003). When considering a wrongful discharge claim on the basis of age under North Carolina law, the court applies the same standards applied under the ADEA. Id.; accord Moser v. Driller's Serv., Inc., 988 F. Supp. 2d 559, 565 (W.D.N.C. 2013); Matthews v. Novant Health, Inc., No. 3:09CV494-RJC-DSC, 2010 WL 2131559, at *7 (W.D.N.C. Apr. 29, 2010) (report and recommendation adopted) ("Regarding Plaintiff's state public policy claim, North Carolina courts "look to federal decisions [in employment discrimination cases] for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases.") (quoting N.C. Dept. of Correction v. Gibson, 308 N.C. 131, 136 (1983)).

### IV. DISCUSSION

#### A. Timeliness of ADEA claim

The court first must address the timeliness of Plaintiff's ADEA claim to determine

whether it is appropriate for adjudication. Plaintiff was terminated on July 25, 2011. (Pl.'s Dep. (#15-3), Ex. 4 (p. 31)). She filed her Charge of Discrimination with the EEOC on January 26, 2012, 185 days later. (Pl.'s Dep. Ex. 5 (p. 32)). Thus, Plaintiff filed her Charge past the 180-day time limit set by the ADEA. See 29 U.S.C. § 626(d)(1) ("No civil action may be commenced . . . until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]. Such a charge shall be filed . . . within 180 days after the alleged unlawful practice occurred[.]"). As noted above, the EEOC issued Plaintiff a Dismissal and Notice of Rights on January 27, 2012, stating that the Charge "was not timely filed with the EEOC." (Pl.'s Dep. (#15-3), Ex. 6 (p. 33)). Additionally, Plaintiff did not file her lawsuit within 90 days of receiving the EEOC's notice of dismissal and right to sue; she waited until July 23, 2014 — well beyond the 90-day statutory time limit for filing an ADEA lawsuit. See 29 U.S.C. § 626(e) ("A civil action may be brought under this section . . . within 90 days after the date of the receipt of such notice."). Plaintiff's ADEA claim is thus time-barred and may not proceed. See Rudolph v. Buncombe Cnty. Gov't, 846 F. Supp. 2d 461, 477-78 (W.D.N.C.) aff'd, 474 F. App'x 931 (4th Cir. 2012) (holding that before a plaintiff may file a lawsuit alleging an ADEA violation, "she must first pursue and exhaust administrative remedies which necessarily include filing a timely charge of discrimination with the EEOC."); Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."); Mann v. Standard Motor Products, Inc., 532 F. App'x 417, 418 (4th Cir. 2013) ("A claimant who fails to file a complaint within the ninety-day statutory time period mandated by Title VII generally forfeits his right to pursue his claims."). As Plaintiff has not offered any argument regarding her tardiness that might be considered an extraordinary or mitigating

circumstance, the court must dismiss her ADEA claim.[1]

## B. Analysis of State Law Claim

Because Plaintiff has not presented any direct evidence of age discrimination, the court analyzes her claim under the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973). See id.; Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Mereish v. Walker, 359 F.3d 330, 334 (4th Cir. 2004). To prevail under the McDonnell Douglas framework, Plaintiff must first establish a prima facie case of unlawful age discrimination. Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006). If Plaintiff does so, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the termination of Plaintiff's employment. Id. at 513-14. This is a burden of production, not persuasion. Holland v. Washington Homes, Inc., 487 F.3d 208, 214

---

[1] In light of the fact that Plaintiff's federal age discrimination claim may not proceed, the court has carefully considered whether it has subject matter jurisdiction over Plaintiff's state law claim, and has determined that exercise of such jurisdiction is appropriate. 28 U.S.C. § 1367(a) provides, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy....". Id. The Fourth Circuit has noted that the doctrine of supplemental jurisdiction is flexible and allows courts to retain jurisdiction where appropriate:

> The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain *or* dismiss state law claims when the federal basis for an action drops away.
> …
> a court has discretion to dismiss or keep a case when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3)…trial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished. Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. The doctrine of supplemental jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values.

Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995) (internal citations and quotations omitted). Having considered such principles of economy, fairness, convenience and comity, the court finds that judicial economy favors retaining jurisdiction since the court is already familiar with the facts of the case. The court will therefore assert subject matter jurisdiction over Plaintiff's remaining state law claim, which arises from the exact same set of facts as the federal claim. See Hartman v. Univ. of Maryland at Baltimore, 595 F. App'x 179, 180 (4th Cir. 2014).

(4th Cir. 2007). Once Defendant has met its burden, the burden shifts back to Plaintiff demonstrate that Defendant's proffered reason is not the true reason, but a mere pretext for discrimination. Warch, 435 F. 3d at 513-14. See also Kinser v. United Methodist Agency for the Retarded--W. N. Carolina, Inc., No. 14-1955, 2015 WL 3397056, at *2 (4th Cir. May 27, 2015). Additionally, to succeed with an ADEA claim, Plaintiff "must prove, by the preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). As to "but-for causation," the Fourth Circuit recently explained,

> for an event to be the "but-for cause," it need not be the sole cause of the adverse employment action. Age discrimination cases often present more than one reason for an employer to take adverse action against an employee, but an employee need not refute each negative mark on his record or every possible legitimate ground for the employment decision to avoid summary judgment. Rather, according to Gross, to prevail on summary judgment the employee must only demonstrate, age-related considerations aside, that under the circumstances these other nondiscriminatory grounds did not animate the employer to take the adverse employment action. In other words, if there existed other legitimate motivations for the decision, the employee must offer sufficient evidence to show these factors were not "the reason" for the employer's decision…·When evaluating cases like this on summary judgment, our focus is on whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the determinative factor in that decision.

Arthur v. Pet Dairy, 593 F. App'x 211, 220-21 (4th Cir. 2015) (unpublished) (internal citations and quotations omitted).

   *1. Prima facie case*

To establish a prima facie case of unlawful age discrimination, Plaintiff must show that: (1) she is a member of the protected class (here, that she is "at least 40 years of age," 29 U.S.C. § 631(a)); (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment

action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004); accord Hartman v. Univ. of Maryland at Baltimore, 595 F. App'x 179, 181 (4th Cir. 2014).

Here, the first two prongs are not in dispute—Plaintiff suffered an adverse employment action and was over the age of 40 (and thus a member of the protected class) at the time. The parties did not state in their briefs who filled Plaintiff's position after she was terminated. When asked about that fact at the hearing, the parties did not have any evidence to offer the court, and Defendant indicated that the tardiness of the filing of this action made that fact difficult to ascertain.[2] The third prong as to job performance and the employer's legitimate expectations is disputed.

Plaintiff argues that she was qualified and performing her work in a manner that met Defendant's legitimate expectations at the time of her discharge. Plaintiff notes that her most recent evaluation before her termination (conducted in September 2010) indicated that she had good customer service skills, was organized, and good at recordkeeping and computer operation. See (##20-7; 20-8). Plaintiff argues that such evaluation indicates that Defendant's proffered reason for terminating her was not in good faith. She also argues that the paint shaking incident does not amount to the level of rudeness to a customer that would justify termination. Defendant argues that the incident with the paint shaker and the corresponding customer complaint is itself evidence that Plaintiff was not meeting employment expectations because she was rude to a customer in violation of company policy.

---

[2] For the reasons explained herein, the court finds that even assuming that Plaintiff was replaced by a similarly qualified younger employee, her claim fails.

The "legitimate expectations" element of the prima facie case requires Plaintiff to prove by a preponderance of the evidence "that [s]he was doing [her] job well enough to rule out the possibility that [she] was fired for inadequate job performance, absolute or relative." Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 515 (4th Cir. 2006) (internal citation and quotations omitted). A court considering this prong may look at evidence of an employee's unsatisfactory job performance, even if that alleged deficient performance was the event that caused the termination. Id. at 515–16 ("because a plaintiff must show by a preponderance of the evidence that he met the employer's legitimate job expectations to prove his prima facie case, the employer may counter with evidence defining the expectations as well as evidence that the employee was not meeting those expectations. To require otherwise would turn the plaintiff's burden at the prima facie stage into a mere burden of production, making it difficult to imagine a case where an employee could not satisfy the 'qualified' or legitimate expectation element…") (internal citation and quotation omitted). However, the fact that the single unsatisfactory incident is the cause of the termination does not necessarily mean that summary judgment should be granted in Defendant's favor. Indeed, the Fourth Circuit stated in Warch that it was "cognizant of the danger that courts might apply the 'expectations' or 'qualification' element of the prima face too strictly in some cases, resulting in the premature dismissal of potentially meritorious claims of unlawful discrimination." Id. at 516. Where Plaintiff's "evidence creates an issue of fact as to whether…the stated reasons for Plaintiff's termination-were simply a 'sham designed to hide the employer's discriminatory purpose,' and, therefore, not 'legitimate,'" summary judgment on the third prong is inappropriate. Young v. CareAlliance Health Servs., No. 2:12-2337-RMG, 2014 WL 4955225, at *4 (D.S.C. Sept. 29, 2014). In analyzing satisfactory job performance, the

relevant inquiry is to the perception of the decision maker, not the self-assessment of the plaintiff. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003).

Here, the court finds that Plaintiff has not presented evidence that the stated reasons for Plaintiff's termination were a sham or otherwise not legitimate. As explained in further detail below in the section discussing pretext, Plaintiff has offered no plausible rebuttal to Defendant's stated legitimate, non-discriminatory reason for terminating her—that a customer complained of her rudeness and Defendant then determined that termination was appropriate. The court has substantial evidence before it to conclude that Plaintiff was not performing in accordance with her employer's expectations given the documentation of the customer complaint, (#15-3, Ex. 1), the follow-up questioning with Plaintiff substantially confirming the incident, (#15-3, Ex. 2), and the declaration of James Mort stating that Plaintiff was terminated solely because of the incident. (#15-2). However, the court is mindful of the Fourth Circuit's admonition against premature dismissal of potentially meritorious claims of unlawful discrimination on this prong, which is likely a matter of particular concern where, as here, one isolated incident of employee misconduct stands against a backdrop of strong employee performance. Thus, the court will proceed to analyze Plaintiff's claim under the remaining steps in the McDonnell-Douglas framework.

### 2. *Legitimate, non-discriminatory reason for termination*

Assuming that Plaintiff has established a proper prima facie case, the court finds that Defendant has offered a legitimate, non-discriminatory reason for her termination. Defendant has offered documentary evidence of the customer complaint about Plaintiff, see (#15-3, Ex. 1), and has offered evidence by way of an affidavit from James Mort, who was the Assistant Store

Manager at the time of Plaintiff's termination, stating that she was terminated solely because of the incident with the complaining customer, and not because of her age. See (#15-2). Mr. Mort also reiterated that Lowe's expects all of its employees to treat customers in a friendly, professional manner and to provide quick, responsive service. (Id. at ¶ 7). Clearly, Defendant was of the opinion that Plaintiff had not fulfilled her obligations to so treat one of its customers. (Id. at ¶¶6-7, 9). Plaintiff acknowledged in her deposition that she was told the reason for her termination was the paint-shaker incident. (Pl.'s Dep. (#15-3) at 26:25-27:8).

Plaintiff argues that the encounter with the complaining customer was not sufficiently egregious to warrant her termination. However, "when an employer gives a legitimate, non-discriminatory reason for discharging the plaintiff, it is not [the province of the court] to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (internal citation and quotation marks omitted). Whether or not the court finds the incident at issue to be sufficiently egregious to merit Plaintiff's termination is irrelevant to the question of whether she was terminated unlawfully on the basis of her age. Because the court finds that Defendant has met its burden of showing that it fired Plaintiff for a legitimate, non-discriminatory reason, the burden now shifts back to Plaintiff to show that Defendant's stated reason for terminating her was not the real reason for her discharge, but mere pretext for discrimination.

### 3. *Pretext*

To show pretext, Plaintiff may introduce evidence to show that "the employer's proffered explanation is unworthy of credence," Holland v. Washington Homes, Inc., 487 F.3d 208, 214

(4th Cir. 2007), such as evidence "that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably." Laing v. Fed. Exp. Corp., 703 F.3d 713, 719 (4th Cir. 2013) (citing McDonnell Douglas, 411 U.S. at 804). Where, as here, "plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, and therefore the validity of their prima facie case depends upon whether that comparator is indeed similarly situated….plaintiffs are required to show that they are similar in all relevant respects to their comparator." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (citations omitted). "Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). "Similarly situated employees are alike with respect to performance, qualifications, and conduct. Generally, the compared employees must have dealt with the same decision-maker and engaged in conduct of comparable seriousness…an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." Popo v. Giant Foods LLC, 675 F. Supp. 2d 583, 589 (D. Md. 2009) (internal citations and quotation marks omitted).

Regarding pretext, Plaintiff points out that at least nine other employees of Defendant had complaints filed about them for "rude or unfriendly" behavior on the customer care website or hotline between 2009 and January 2012, and that none of them were terminated. See (#20-4) (Defendant's Answers to Plaintiff's Second Set of Interrogatories, No. 16-17); (##15-14; 15-5). Plaintiff and the other coworker involved in the paint shaker incident were the only two

identified employees who received complaints during that time who were terminated. (Id.) However, as Defendant notes, the employees who received customer complaints were both over and under the age of 40—six were under the age of 40 and five (including Plaintiff) were above 40. (#15-4, p. 2-3). The Fourth Circuit has noted that comparator evidence is "especially useful in discrimination cases…for several reasons. To start, the very term 'discrimination' invokes the notion of treating two persons differently on the basis of a certain characteristic that only one possesses….the ordinary interpretation and meaning of the term discrimination implies that a plaintiff has received differential treatment vis-á-vis members of a different group on the basis of a statutorily described characteristic. Conversely, similar treatment of similarly situated individuals is what anti-discrimination statutes aspire to achieve." Laing v. Fed. Exp. Corp., 703 F.3d 713, 719 (4th Cir. 2013) (internal citations and quotations omitted). Here, the comparator evidence indicates that age did not play a factor in the termination of people who were complained about for rudeness, and that there was no "differential treatment vis-á-vis members of a different group on the basis of a statutorily described characteristic," id., because the other employees who received complaints of rudeness but were not terminated were both within and beyond the protected class. While they were similar in that they all received customer complaints, the court cannot draw any inference of age discrimination given that other employees within the protected class were not terminated. Additionally, the affidavit from Mr. Mort indicates that not every complaint results in employee discipline, but rather, Lowe's conducts an investigation of the incident and makes an appropriate determination as to the correct course of action. (Mort Decl. at ¶ 3). Defendant correctly notes that there is a distinction between a customer complaint and employee misconduct, and that not every complaint involves

alleged employee conduct that merits such harsh discipline. See (#15-2 at ¶¶3-4).[3]

As further evidence of pretext, Plaintiff also specifically references two incidents with younger male employees wherein they made racist and/or inappropriate sexual remarks at work and were verbally disciplined for it, but not discharged. See (Pl. Dep. (#15-3) at p. 45-57). However, the two young men who engaged in such misconduct are not "similarly situated" to Plaintiff for several reasons. Most significantly, Plaintiff admits that their misconduct occurred in the employee break room, not in the store while interacting with customers. (Id.) Additionally, Plaintiff has not introduced any evidence that these employees were the subject of a customer complaint (on the customer care hotline or otherwise), or that they were found to have been "rude or unfriendly" to customers. The court finds that even in the light most favorable to Plaintiff, she cannot show pretext because she has not shown that any other employee who was similarly situated (but for their age) was treated differently. See, e.g., Laing v. Fed. Exp. Corp., 703 F.3d 713, 721 (4th Cir. 2013) (finding that Plaintiff had not satisfied burden of showing pretext, noting, "[s]ignificantly, [plaintiff] has not identified any similarly situated FedEx employee—that is, an employee accused of violating the same company policy but who did not take FMLA leave—who was given more favorable treatment. Such comparator evidence, of course, would be "especially relevant" to a showing of pretext, but plaintiff has none."). Further, Plaintiff has not shown that any other employee alleged to be similarly situated had the same

---

3 The court also notes that of the seventeen incidents identified by Plaintiff in her Response (#20 at p. 5-8) to Defendant's Motion for Summary Judgment, nine of them deal with customers complaining about rudeness encountered while making returns, applying coupons, and product pricing at the register. Mr. Mort stated in his affidavit that "[m]any of the complaints received result from employees enforcing store policies on coupons and returns. In such instances, employee discipline often is not warranted. Whether employee discipline is warranted ultimately depends on the results of the investigation into the complaint." (#15-2 at ¶4). Six of the listed complains do not identify an employee by name. Thus, while the court acknowledges that many employees received complaints regarding their supposedly rude treatment of customers, the conduct complained of differs somewhat than that complained of in the case at hand.

supervisor or had engaged in similar conduct without any mitigating circumstances, which further indicates lack of similar situation. Accordingly, the court finds that Plaintiff has failed to meet her burden of showing pretext.

### 4. *"But-for" causation*

The court also finds that Plaintiff's claim cannot proceed because she has failed to show that age was the "but-for" cause of Defendant's decision to terminate her employment. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009). Plaintiff argues that a review of the customer complaint at issue and complaints directed at other employees shows that she and the other "paint shaker incident" employee were the only employees treated with a "no-tolerance policy," and that this fact is sufficient for a jury to conclude that but for her age, she would not have been terminated. The court disagrees. "[T]o prevail on summary judgment the employee must only demonstrate, age-related considerations aside, that under the circumstances these other nondiscriminatory grounds [for termination] did not animate the employer to take the adverse employment action." Arthur v. Pet Dairy, 593 F. App'x 211, 220 (4th Cir. 2015) (unpublished). As explained above, there is simply no evidence in the record calling into doubt that the customer complaint about Plaintiff's behavior and the consequential termination of her employment were the reason for the adverse employment action. The court is mindful that "[w]hen evaluating [age discrimination] cases…on summary judgment, [its] focus is on whether the plaintiff has provided sufficient evidence to cast doubt upon the employer's stated reasons for the employment action, such that a reasonable juror may find age was the determinative factor in that decision." Id. at 220-21. Here, Plaintiff has failed to cast such doubt.

V.   CONCLUSION

For the reasons explained herein, Plaintiff's claims pursuant to the ADEA and the NCEEPA may not proceed. Plaintiff presents evidence that would require a jury to base a decision on whether Plaintiff was fired or unlawful reasons upon mere speculation, which cannot survive summary judgment. Because even in the light most favorable to Plaintiff, the totality of the evidence presented indicates that there is no genuine factual issue for trial and that no rational jury could find for Plaintiff, Defendant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 817 (4th Cir. 1995). The court therefore enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment (#16) is **GRANTED**, and this action is **DISMISSED**.

Signed: November 17, 2015

Max O. Cogburn Jr.
United States District Judge